ROBERT MURRAY v. THE PATERSON RAILWAY COMPANY.

1. A child, about two years and nine months old, attempted to cross a public street in which a line of trolley cars was operated. There was a car then coming towards the child. From the evidence the jury could infer that, although its power was off, the car was running at great speed, occasioned by a down grade and its very crowded condition, and that when the motorman saw the child start to cross, he did not apply the brakes or attempt to retard the speed of the car until the child fell upon the track. It was run over before the car stopped.

2. The trial judge was requested to charge that, in regulating the speed of the car, the motorman was not bound to allow for the possibility that a child of that age might undertake to cross and fall upon the track so as to be unable to get off before being run over. The request was given with the qualification that the rate of speed of the car was otherwise reasonable.

3. By this qualification and by other parts of the charge it appears that the case was tried on the theory that, if the car was run at reasonable speed, the motorman was not bound to take into consideration the possibility of the fall of a child of that age in crossing, while, if running at an unreasonable rate of speed, he was bound to that duty.

4. Upon the charge the verdict must be taken to have determined that the car was run at an unreasonable rate of speed, and that the liability of defendant was thus made out. *Held*, that defendant has no ground of complaint thereon. But in declaring this conclusion it is not intended to indicate an opinion that a motorman, running his car in a public street, is not bound to consider the apparent condition of persons attempting to cross the street, and, if they appear to be infants of tender age, or crippled, decrepit or drunken persons, to regulate the speed of the car as reasonable prudence would require, considering their right to cross the street and such risks as might naturally result from their apparent condition.

On rule to show cause.

This case is presented to this court by the following certificate:

Passaic Circuit Court. The Paterson Railway Company *ads.* Robert Murray. In tort.

A rule to show cause why a new trial should not be granted having been made in the above-stated cause, and it appearing that the defendant has filed reasons for granting a new trial, and that the case is one of difficulty and doubt:

I, Gilbert Collins, judge of the said Passaic Circuit Court, do hereby certify that the printed book is the case made and stated in this cause, and I hereby certify the same to be argued at the bar of the Supreme Court for its advisory opinion upon the following questions of law being particularly presented and stated in said reasons filed as aforesaid:

*First.* Whether it was error to refuse defendant's motions for a nonsuit.

*Second.* Whether it was error to refuse the defendant's motion to direct a verdict for the defendant.

*Third.* Whether it was error for the trial judge to refuse to charge the jury that they should find under the evidence that the injuries of the plaintiff were the result of an accident for which the defendant was not liable.

*Fourth.* Whether it was error for the said judge to decline to charge the jury in accordance with the defendant's request as follows: That even if the jury found that the defendant was operating the car in question at an excessive rate of speed, such excessive speed was not the proximate cause of the plaintiff's injury.

*Fifth.* It appearing in the case that the plaintiff was crossing the track of the street railway operated by the defendant, and while so crossing, fell prostrate and was run over and injured by a car of defendant which was moving on said track; and one question of fact being whether the rate of speed of said car was unreasonable and excessive; whether the said judge erred in declining to charge in accordance with the following requests of said defendant, or either of them, to wit:

(1) That in regulating the speed of the car the motorman was not bound to allow for the possibility that children under three years of age might undertake to cross the track at a place where there was no regular crossing and fall prostrate on the track, and thereby be unable to get off the track in time to avoid being run over.

(2) That in regulating the speed according to the circumstances existing at the time, the motorman, while obliged to

have in view the safety of persons, including children, in crossing the track in front of the car, was not obliged to have in view a possibility of persons so crossing falling down upon the track, and thereby being exposed to the danger of being run over.

*Sixth.* Whether it was error for the court to charge as requested as aforesaid with the charges and qualifications of the propositions as set forth in the charge of the court.

*Seventh.* Whether it was error for the court to charge the jury that if they found the motorman negligent in the particulars indicated in said charge they should find for the plaintiff and assess his damages.

*Eighth.* Whether the verdict was contrary to the weight of the evidence.

*Ninth.* Whether the damages—$10,000—assessed by the jury were excessive.

GILBERT COLLINS,
*Judge.*

It appears from the case made and stated, which has been certified for an advisory opinion on the questions above mentioned, that plaintiff, when about two years and nine months old, was run over by a trolley car of the defendant, in a public street in Paterson. In consequence, one of his legs had to be amputated.

The action was brought in the Passaic Circuit to recover damages for the injury, and a verdict having been rendered for plaintiff, a rule to show cause why it should not be set aside was allowed by the Circuit judge.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the rule, *Eugene Stevenson.*

*Contra, Zebulon M. Ward.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.   The first four questions submitted for an advisory opinion may be considered together.

It appears from the evidence contained in the stated case, that when his injury was received plaintiff was crossing a public street diagonally and not at a street crossing; that a trolley car of defendant was traveling on its track upon that street, towards plaintiff; that the car was crowded with passengers and that no power was being applied, but the car was running upon a down grade, but not a steep grade.

There was also evidence from which it could be inferred that the car was running at a great speed, and that when plaintiff attempted to cross the street, within the view of the motorman, the latter did not attempt to check the speed of the car.

The evidence further showed that plaintiff, while running across, fell upon the track of the approaching car.

There was evidence from which it could be found that the motorman then, for the first time, applied the brake and endeavored to arrest the motion of the car.

Before plaintiff could arise or a bystander, who ran to his assistance, could drag him from the track, the car ran over one of his legs.

The case shows that it was not contended at the trial (and it has not been contended here) that plaintiff was capable of contributing to his injury by his own negligence.

The sole question, then, is whether there was evidence to go to the jury in respect to the negligence of the motorman, the agent of defendant, in the management of the car.

Our conclusion is that there was such evidence and that it was properly submitted to the jury.   They were entitled to and were permitted to consider the momentum given to a car on a down grade by its heavy load, and to determine whether or not it was running at a very high rate of speed.   They were then entitled to consider whether or not, taking into account the momentum and speed, it was not the duty of the motorman, as soon as he saw plaintiff commence to cross the

street, to use his brake and arrest the motion of the car, and not to postpone that act until he saw the plaintiff fall on the track.

But it is strenuously urged that this cast upon the motorman a duty greater than the law imposes. It is contended that, as the evidence shows, in the opinion of the bystanders, plaintiff, if he had not fallen, would have passed the track, going in the direction and at the speed he was, without injury, and that no duty devolved on the motorman to take into consideration the chance that a child of that age would fall upon the track.

Whether a motorman is charged with that duty when he is running his car at a rate of speed which is reasonable, cannot be considered, for the trial judge tried the case, as will be seen, upon the ground that no such duty was imposed on the motorman. He left to the jury whether, if the car had been run at a reasonable rate of speed or kept under a control appropriate to the momentum and grade, it could not have been stopped, after the child fell, without running over him. So that the case was put upon the unreasonable rate of speed and the duty which, under the circumstances, grew out of that fact, viz., to maintain a control by the brake which would stop the car within a reasonable distance.

In this we perceive no error, and the first four questions must be answered in the negative.

The fifth question asks consideration of the refusal of the trial judge to charge two requests set out therein.

These requests relate to the duty of a motorman in regulating the speed of his car, and the judge was asked to instruct the jury that the motorman was not bound to consider the possibility that a person who was crossing the track in front of his car might fall upon the track, without any reference to the rate of speed at which he was running his car. The judge charged the jury in the very language of the requests, with the added statement that the rate of speed must be otherwise reasonable.

So far as the case before us is concerned, I think the re-

quests were rightly refused. If a motorman is running his car in a public highway at an unreasonable rate of speed, and he sees a child of tender years attempting to cross the street in front of his car, I think he is bound to exercise such care for its safety under the circumstances as reasonable prudence would require. As children of that age frequently fall, he is bound to consider that circumstance, and, if prudence requires, to abate the unreasonable speed.

The fifth question must, therefore, be answered in the negative.

The sixth and seventh questions are disposed of by what has been said, and must be also answered in the negative.

The eighth and ninth questions relate to matters of fact, and present no question of law at all.

In my judgment they are not questions proper to be certified under the provisions contained in sections 247, 248 and 249 of the Practice act.

Those provisions came under consideration in the Court of Errors in the case of a judgment brought there by writ of error from a Circuit Court, which judgment had been entered after a rule to show cause why a new trial should not be granted, had been allowed and certified to this court and returned with the advice that the rule should be discharged. Errors having been assigned in the Court of Errors upon the advisory opinion, a motion was made to strike them from the record. The report of the case indicates that the motion prevailed by the unanimous vote of the court. But two opinions were delivered, exhibiting divergent views. Chief Justice Beasley expressed the view that error could not be assigned upon an advisory opinion of this court returned to the Circuit and advising the making absolute or discharging a rule to show cause. Mr. Justice Dixon declared that error could be assigned upon such an opinion so far as it expressed legal propositions, but not upon its determination of questions relating to the preponderance of evidence or the amount of damages. *Delaware, Lackawanna and Western Railroad Co.* v. *Nevelle*, 22 *Vroom* 332.

The view expressed by the Chief Justice may be assumed to have expressed the opinion of the majority, for that is the opinion stated in the syllabus, which was doubtless prepared by him.

Upon that assumption, I think that if it were an open question it might be strongly argued that the legislation now contained in the three sections above referred to was not intended to permit a rule to show cause why a new trial should not be granted to be certified. For there are clear indications in the statute that what was permitted to be certified was what could be reviewed by writ of error.

But, as was pointed out by Mr. Justice Dixon, an exposition of this legislation by contemporaneous practice precluded the contention that a rule to show cause was not within the intention of the acts. The contemporaneous cases referred to by Mr. Justice Dixon in the opinion mentioned, show, on examination, that the questions certified embraced purely questions of law. Nor am I able to discover until comparatively modern days any certified rule involving questions of fact as to weight of evidence, amount of damages, &c.

Latterly, the question was directly presented to this court whether a Circuit Court could certify a rule to show cause so as to require us to settle facts in dispute. The determination was contrary to the existence of such power in the Circuit Court. *Destefano* v. *Calandriello,* 28 *Vroom* 483.

We conceive that this case governs that now before us as to the questions eight and nine.

A certificate answering the other questions will be made.

This will leave the Circuit Court free to deal with those questions if it desires.