MERKL, ADMINISTRATOR, &c., DEFENDANT IN ERROR, v. JERSEY CITY, HOBOKEN AND PATERSON STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided November 18, 1907.

1. The dissevered body and mutilated remains of the plaintiff's intestate were found, at night, scattered on and along the defendant's tracks in the public highway, just after its car had struck and run over him, under circumstances detailed in this opinion. *Held*, they raised no legal presumption that the deceased had been guilty of such contributory negligence as would bar recovery in the action.

2. Whether, under all the evidence, the car, at the time of collision, was going at a reasonable rate of speed, or the motorman operating it was properly on his guard, and reasonably. careful and vigilant in looking out for the safety of human life on and near his tracks, were jury questions upon the solution of which the defendant's negligence in law depended.

3. Except in cases where the motorman's negligence is not the immediate or proximate cause of the injury (as, for instance, where the injured person darts, or comes very suddenly in front of the car, and the accident would have occurred even if it had been running at an entirely safe and proper rate of speed, and the motorman had been on his guard), the question of his negligence should be submitted to the jury.

On error to the Supreme Court.

Action by John Merkl, administrator, &c., of George Merkl, deceased, against Jersey City, Hoboken and Paterson Street Railway Company. Plea, general issue. Judgment on verdict for plaintiff, and defendant brings error.

For the plaintiff in error, *Bedle, Edwards & Holmes.*

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

VREDENBURGH, J. Under the only assignments of error in the case, viz., to the refusal of the trial justice to nonsuit, and to direct a verdict for defendant, the verdict of the jury, as to all disputed facts, is final, and the plaintiff in error cannot succeed in this court unless, from the uncontroverted evidence, the plaintiff's intestate was shown to have been guilty of negligence contributive to his death, or, failing in that, unless from such evidence it appeared that defendant was free from negligence causative of the injury.

The evidence, abridged sufficiently for the proper understanding of the questions of law presented, established that the deceased pedestrian was killed in the darkness of the early morning of April 13th, 1906 (about two fifteen A. M.), by the defendant's trolley car running on the northbound of its two (double) tracks on Berganline Avenue, in North Bergen, New Jersey, at or within five or ten feet of the end of Thirty-first street, which touches, but does not cross, the avenue there. No witness, except perhaps the defendant's motorman,

either saw him upon the tracks before the accident or witnessed its occurrence. Assuming, however, for present purposes, the truth of the motorman's testimony most favorably for the plaintiff in error, it was to the effect that he was upon the front platform operating his car, and running at the rate of about eight miles an hour; that he looked down towards the track and first saw the deceased lying on his side about three feet distant from the front of the car, between the two rails of the northbound track, with his face towards the car, in a "crunched-up position;" that it was a "very dark spot there," and he was so dazed he could not tell whether it was "a dog or a man;" that he so stated to the passengers immediately after the accident, when he went through the car. He did not say whether he thought the man was conscious or not at the time he thus saw him; nor did he state any facts from which it could be inferred that he was conscious. The car's headlight and inside electric lights were burning, and also an electric street light about two or three hundred feet down Thirty-first street. After the collision the car ran one hundred and fifty feet beyond before it was stopped by the brake. No bell was sounded at or before the accident. The avenue there is straight for a long distance in the direction from which the car was coming. From these facts, are we justified in drawing a legal inference that the intestate had *voluntarily* so placed himself? If so, it must have been for a suicidal or criminal purpose. His situation between the rails was, it seems to me, as consistent with an *involuntary* fall or position (while asleep, for instance, or in a fit, or from intoxication, or from an accidental misstep in abortive efforts to cross, or from being thrown down there by the violence of others) as with a *voluntary* prostration on his part. The circumstance was as reconcilable with a cause which was beyond his own control as with one over which he had complete control. The law presumes innocence rather than guilt. It also assumes, until the contrary appears, that every man intends to preserve his life rather than to destroy it. The rights of• the defendant company to the possession of their

tracks over the public highway are paramount, but not exclusive, and the traveler on foot has the right to be on their tracks for purposes of crossing, certainly, and to cross them at any point, whether at a street crossing or not. Such is the unquestioned law here and elsewhere. *Thomp. Negl.* 1143, 1144, and cases cited in notes.

But the counsel of the plaintiff in error insist the recited facts demonstrate to the contrary; that the intestate was guilty in law of contributive negligence. They rely especially upon the case, decided in the Supreme Court of Rhode Island, of *Vizachero* v. *Rhode Island Railroad Co.,* 26 R. I. 392, which they refer to in their briefs as so similar to this in hand that "the one might be substituted for the other." An examination of the circumstances construed in that case will show, I think, important and controlling differences. There it was conceded that the plaintiff's intestate, a pedestrian, was seen before the accident, alive, and crawling on his hands and knees, between the rails and towards the car, at a place where (as the court found from the evidence) he must have seen the car for a distance of eight hundred feet from him. The court concluded from these facts that the contributive negligence of the intestate consisted in his *voluntarily crawling* towards a visible danger, instead of trying to escape it by crossing the rails to a place of safety. Judge Douglas, in his opinion, in dealing with this branch of the case, said: "The negligence of the plaintiff's intestate did not consist in walking upon the track, which he had a right to do until the car approached, but in remaining upon it after the car was plainly visible, and this negligence continued until the car struck him. The opportunity for him to escape began when he could have seen the car eight hundred feet away, and only ended a few seconds before he was struck. His neglect of this opportunity, as much as the approaching car, caused the accident." It is evident from this language of the court that the intestate, who was held guilty of contributive negligence in the given case, was shown to possess not only sufficient consciousness and will power, but also the

physical ability to execute his volition in order to escape an imminent danger. In the present case the motorman's evidence did not show, nor tend to show, that the intestate possessed either the faculty of will or the power of motion or the ability to escape from a place of danger. The comparison between the two cases need not be pursued further. The application of the doctrine of contributive negligence to the facts of the Rhode Island case affords no support, it seems to me, for its extension to the present. I think the intestate here was not shown by the evidence to have been guilty of negligence contributive, in a legal sense, to his death.

It is next insisted that the defendant was not proved to have been guilty of actionable negligence in the management of its car. But this was a question for the jury. The learned trial justice so regarded and treated it, leaving it to them under proper instructions, to which no exceptions have been sealed. That the jury were warranted in finding the motorman was operating his car at an excessive and unreasonable rate of speed is manifest not alone from the evidence of passengers to the effect that it was running at the rate of twenty miles an hour, but also from the extraordinary consequences ensuing the collision. A large, muscular young man, weighing two hundred and twenty pounds, as shown by the evidence, was so mutilated by the force of the impact that his heart, liver and intestines were literally torn from his robust frame, his body was cut and severed into parts, which were scattered along and upon the railroad track. The momentum of the running car was so great that even such an obstruction, coupled with the efforts of the motorman to stop it, failed to prevent it from going one hundred and fifty feet beyond the place of collision. So little vigilance or watchfulness of the track in his front was exhibited by the motorman that he admitted he did not see the intestate until his car was within three feet of and almost upon him. Whether the car was running at an undue and excessive rate of speed, or the motorman was failing to keep such a lookout as reasonable care required, and the accident was thus occasioned, are mat-

ters which, by the decisions of our courts, have always been regarded as proper questions for the jury. The verdict of the jury must be deemed to have determined that the car was run at an unreasonable rate of speed, and that the motorman was not sufficiently on his guard. *Murray* v. *Paterson Railway Co., 32 Vroom* 301; *Hughes* v. *Camden and Suburban Railway Co., 36 Id.* 203.

The rule adopted in this court is this, that "if, from the facts established, negligence may reasonably and legitimately be inferred, it is for the jury to say whether from those facts negligence ought to be inferred." *Zolpher* v. *Camden and Suburban Railway Co., 40 Vroom* 417, 420; *Conrad* v. *Elizabeth, &c., Railway Co., 41 Id.* 676.

And, except in cases where the motorman's negligence is not the immediate or proximate cause of the injury (as, for instance, where the injured person darts or comes suddenly in front of the car, and the accident would have occurred even if it had been running at an entirely safe and proper rate of speed, and the motorman had been on his guard), the courts hold that the question of his negligence should be submitted to the jury. *Woechner* v. *Erie Electric Motor Co., 176 Pa. St.* 451; *Schnur* v. *Citizens' Traction Co., 153 Id.* 29; *Traction Company* v. *Heitman's Administrator, 32 Vroom* 682.

The judgment below should be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J. 13.

*For reversal*—None.