CHRISTIAN A. ANDERSON v. PUBLIC SERVICE CORPORA-
TION OF NEW JERSEY.

Argued June 3, 1908—Decided July 19, 1909.

Under the circumstances of this case, where it appeared by a pre-
ponderance of testimony that plaintiff had been seen intoxicated
shortly before the accident and the negligence attributed to the de-
fendant rested substantially upon the plaintiff's uncorroborated
story, which appears inconsistent with the situation in which he
was found after the accident, and which even if true discloses
negligence on his part, a verdict for the plaintiff is set aside.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCH-
ARD and MINTURN.

For the plaintiff, *George S. Silzer.*

For the defendant, *Leonard J. Tynan.*

The opinion of the court was delivered by

MINTURN, J. According to the testimony of the plaintiff,
he was walking along the highway between Perth Amboy and
Metuchen, about seven o'clock on the evening of September
7th, 1907, when he was overtaken by an automobile, and
stepped aside to let it pass. In making this movement he
stepped close to the trolley track of the defendant company,
which was laid upon the easterly side of the highway. Within
a minute or two after the passage of the automobile the
plaintiff says he was struck by a trolley car, upon the right
shoulder, was tripped up by the car fender, and thrown upon
the track, the car passing over both feet, which necessitated
their amputation. The men upon a work car, following the
car in question, a few minutes later discovered the plaintiff,
picked him up, and he was subsequently taken to the hospital.

The verdict in the case was for the plaintiff for $6,500,

and the rule to show cause raises the question of the propriety of this verdict under the testimony and the law.

The case, with the exception of the plaintiff's testimony, is almost barren of any direct testimony upon the happening of the accident, and the verdict, therefore, is largely the product of presumptions, claimed to exist by reason of the existence of proved facts.

The plaintiff's explanation of his inability to avoid the car which struck him was that the automobile left a cloud of dust behind it, and that the car coming from behind him two or three minutes thereafter, gave no warning by bell or by light of its coming. His explanation of his physical and mental conditions at that time, as testified to by himself and others, throws light upon the question of the plaintiff's contributory negligence, and serves to elucidate the question of the proximate cause of the accident. He knew the tracks were there, and says that, while the automobile was passing, he moved up closer to the tracks. The road was a wide macadamized road, without sidewalks, but with ample room upon the roadway proper to enable a wayfarer to avoid a collision. The plaintiff as a resident in the neighborhood presumably was familiar with the road and the tracks, and, at the time of the accident, was walking from a public house to his home, a distance of a mile. He says he left Perth Amboy at about a quarter of five o'clock upon a trolley car, and was taken sick thereon; that he alighted and went to the house of a friend; that he again took a trolley car, but feeling sick again he alighted at Underhill's Hotel, where he sat upon the stoop until he decided to walk home. Upon the nature of the sickness which induced plaintiff, as he alleges, to leave the cars on two occasions, other witnesses place a different construction. Thus, Martin saw him at noon staggering, from which he concluded that plaintiff was intoxicated. At nearly two o'clock, Dolan saw him board a car, and he says plaintiff "was under the influence of liquor; appeared to be cursing in the car when I went up to him; he was noisy all the way down until he got off." This witness saw the plaintiff again at about an hour before the accident and he appeared to him then "to be very drunk." Pier-

son, the postmaster at Metuchen, loaned plaintiff at his request that day twenty-five cents, after which plaintiff immediately went to Meyer's saloon across the street, and at that time Pierson says the plaintiff "had been drinking" and was saying foolish things, "like anybody will say when they have been drinking." Miss Lamporten, who saw him on the car coming from South Amboy, and who sat on the seat with him, testified that "he had been drinking," and she says, "he had money in his hand and offered it to me, and he said something, I don't know what."

Without further recital of testimony of this character, it will suffice to say that to us the conclusion seems unavoidable that at the time of this accident the plaintiff was in an intoxicated condition, and that his version of the circumstances under which he received the injury must appear entirely untrustworthy. While his intoxication would not *ipso facto* invalidate his testimony, and it should not be ignored if at all substantiated, it must be, nevertheless, judicially noticed that intoxication is productive of the existence of a mental condition which renders testimony unreliable, and impairs credibility. *Rice Ev.* 28; *Whart. Ev.,* § 401.

He himself admits that he had a drink of whiskey early that morning, and divided a kettle of beer with a painter at lunch time, and that about two o'clock he went to a saloon where he remained an hour, and where he imbibed more beer, and "a couple of five-cent drinks." And still later, at Meyer's saloon, he had "a couple of drinks upon a sick stomach," which he says he had been "troubled with for a couple of days."

The only testimony adduced in behalf of the plaintiff, to explain the happening of the accident was that of one Wagner, who was a passenger on the car, and who testified that he felt four bumps at the point where the plaintiff was injured, and, looking back, saw an object on the ground. But he also testified that the car was lighted; that the work car which followed carried a headlight, and that the track from that point for quite a distance was straight.

The plaintiff was found lying at the right-hand side of the

right track, at a right angle to the track, with his feet stretched over the right-hand rail, and in passing it may be remarked that no evidence was adduced to explain his position at that place, and we cannot reconcile it with his recital of the circumstances under which he was struck, for clearly when struck he was walking upon the other side of the left track, and we can only conjecture as to how he reached the side where he was found.

Without reviewing the testimony more in detail, it will suffice to say that it is not apparent how upon any correct conception of tort liability, negligence can be attributed under the plaintiff's version of the circumstances of this case, to the defendant. The mere happening of the accident will not afford a basis for liability, and this has been so often judicially determined that citation of authorities to support the proposition is needless. *Smith Negl.* 248; *Smith* v. *G. E. Railway Co., L. R.*, 2 *C. P.* 1.

Most assuredly some substantive testimony affording a basis for reasonable inference—testimony which does not carry in its statement elements contradictory of its probability—must be adduced to warrant liability for alleged tort-feasance. To us it seems manifest that if the story of the plaintiff be accepted, his negligence in failing to see or hear the car, under the circumstances, in time to avoid the accident, or, if the conditions made that impossible, then his remaining in such close proximity to the track, after the automobile had passed, when the same conditions must have made it impossible for a person operating a car to see him, was the proximate cause of his injury. But, upon the entire case, and in view of the great preponderance of testimony as to the facts leading up to the accident, we are unable to discover in the testimony any act of tort-feasance on defendant's part upon which liability can be predicated. *Hummer* v. *Lehigh Valley Railroad Co.*, 45 *Vroom* 196.

The rule to show cause should therefore be made absolute.