CHRISTIAN A. ANDERSON, PLAINTIFF IN ERROR, v. PUB-
LIC SERVICE CORPORATION, DEFENDANT IN ERROR.

Submitted March 27, 1911—Decided June 19, 1911.

1. The plaintiff was walking over the public highway toward his
   home, very near to the trolley rails of the defendant's track laid
   upon the highway, when its car, going in the same direction,
   came from behind him, but which he neither saw nor heard
   (no signal by bell or otherwise being given), and ran over him,
   and it was *held*, under the circumstances detailed in the following
   opinion, that the questions of the plaintiff's contributory negli-
   gence and of the defendant's negligence were for the jury.
2. Even assuming the plaintiff unreasonably obstructed the trolley
   track, such illegal act did not constitute such contributory negli-
   gence on his part as will relieve the company from responsibility
   for an accident which might have been avoided by the exercise
   of proper care by it, nor absolve it from its duty so to act as,
   if possible, to avoid running him down and doing him harm.
3. If there be any obstruction from dust or darkness or other cause
   to the motorman's sight of his track ahead of him, his duty
   requires him to use still greater care to reduce his speed and
   to stop his car, if necessary, until his observation of the track
   ahead of him becomes clear.

On error to the Supreme Court.

For the plaintiff in error, *George S. Silzer.*

For the defendant in error, *Leonard J. Tynan (Alvah A. Clark,* on the brief).

The opinion of the court was delivered by

VREDENBURGH, J. The record before us exhibits the pro-
ceedings at the second jury trial of this case. At the first trial
the jury found a verdict for substantial damages in the plaint-
iff's favor. Upon rule to show cause why that verdict should
not be set aside, the Supreme Court made the rule absolute.
49 *Vroom* 285. In its opinion that court in granting a new
trial concluded it in the following language:

"To us it seems manifest that if the story of the plaintiff

be accepted, his negligence in failing to see or hear the car, under the circumstances, in time to avoid the accident, or, if the conditions made that impossible, then his remaining in such close proximity to the track, after the automobile had passed, when the same conditions must have made it impossible for a person operating a car to see him, was the proximate cause of his injury; but, *upon the entire case,* and in view of the great preponderance of testimony as to the facts leading up to the accident, we are unable to discover in the testimony any act of tort-feasance on defendant's part upon which liability can be predicated." At the present trial, when the plaintiff had closed his evidence, the learned trial judge directed the entry of a judgment of nonsuit, stating that his reason for so doing was that he was "not permitted to disregard the ruling of the Supreme Court as to the cause of the accident being due to the plaintiff's negligence," and that he considered that finding as controlling. In determining the legality of this compulsory nonsuit, as, under the assignments of error we are now required to do, the ground alleged by the trial court for its action seems to have been an inadvertence, for the evident reason that the judgment of the Supreme Court was based upon its failure to discover from the weight of the testimony any act of tort-feasance on the defendant's part as a ground of liability, while the trial judge construed that ruling as founded upon the view that under the weight of testimony the accident was due to the plaintiff's own negligence. But whether or not the learned trial judge correctly construed the effect of the opinion of the Supreme Court, we think that in directing a nonsuit under the evidence offered by the plaintiff, as disclosed by the present record, he erred. The Supreme Court, having granted the *venire de novo* because of its opinion as to the preponderance of the evidence offered in the first trial (as above stated), such grant was made without prejudice, of course, to the plaintiff's right to again submit all of his legal evidence to the verdict of a jury, subject only to the superior right of the trial court to order a compulsory nonsuit in case the evidence so presented failed to establish a legal right of recovery against the defendant.

The negligence charged as the ground of recovery and outlined in the plaintiff's declaration is, that the defendant did not use due and proper care in operating, controlling and running its trolley car over its tracks upon the public highway, but negligently propelled, ran and controlled its car so that, when going at a high rate of speed, it struck and knocked down the plaintiff (who was properly and lawfully using said highway) upon the ground under and beneath the wheels of the car, cut off both his legs, and inflicted painful and permanent injuries upon him.

The material circumstances of the occurrence in proof at the trial, as related by the plaintiff and his witnesses, were these: The plaintiff, in the early evening (about seven o'clock) of September 7th, 1907, was walking in a westerly direction toward his home, over the public highway between the towns of Perth Amboy and Metuchen, very near to the trolley rails of the tracks of the defendant, when its car, under the management of its agents and going in the same direction, came from behind him, but which he then neither saw nor heard (it gave no signal by bell or otherwise), and striking his head and shoulder knocked him down under its wheels and ran over his legs. At and just before the time of the collision the plaintiff's face and eyes were turned toward the direction he was walking, when, hearing the loud signals made by an overtaking automobile, he stepped to one side in order to avoid danger from it, and, in so doing, approached close to the rails of the defendant's track. As to his position and what then immediately happened, his testimony—to use his words—thus narrates the details, viz.: "I kept on walking right along close up to the track" * * * "and heard the automobile going by, and kept on walking along. The next thing I knowed I was—I felt something behind me and turned around and saw a trolley car right up against me hitting me. It hit me on the side of my head and on my shoulder, I guess, and knocked me over and that is all I knowed about it. I seen the trolley car —had a headlight on—and just as I turned it struck me and tumbled me over, and that is the last I know."

In answer to the question whether the automobile threw up any dust, he replied, "Yes, quite some; it was pretty dry"— and afterwards, in the course of his testimony, added that the automobile threw up a lot of dust and made a lot of noise and that he kept on walking right along. When asked why he didn't move away from the track, he answered that he was trying to rub some dust out of his eyes and he didn't hear anything to bother him so he kept right on walking; that he didn't hear the car coming from behind and didn't turn and look; that there was daylight enough to see anything, and light enough for the motorman to see ahead of him; and that no notice by bell or other signal of the approach of the car was given by those in charge of it. There is nothing in the evidence to show there was any turn or angle in the road or trolley track at the place of the accident, or any physical obstruction there to the vision of a motorman occupying the front platform of a car running in a westward direction. This highway seems, from the proofs, to be an ordinary country road without sidewalks and with no defined foot paths over it.

Under our trial system, it is held that questions such as this case presents must be submitted to the jury whenever the testimony is fairly susceptible of an inference consistent with the plaintiff's contention. *Day* v. *Donohue,* 33 *Vroom* 380, and cases cited upon that page. *Consolidated Traction Co.* v. *Reeves,* 29 *Id.* 573; *Vrooman* v. *North Jersey Street Railway Co.,* 41 *Id.* 818.

The plaintiff, under the principles settled by these cases, had the right to assume that the car was furnished with appliances to reduce speed, and to *stop,* and with a motorman to make use of such appliances. The rights of the plaintiff and of the traction company upon the street are declared to be on an equal footing, except that, since the trolley company's car cannot deviate from its tracks, the plaintiff is bound, upon notice or knowledge of its approach, to step aside so as not unreasonably to obstruct its passage over the defendant's track; nor, on the other hand, has the company the right to propel its car at a rate of speed, or in a manner incompatible with the safe and customary use of the highway by either other vehicles, or by

foot passengers, and the traveler in the highway is not bound to refrain from crossing for fear that the motorman will not make use of the appliances provided to reduce speed. *Consolidated Traction Co.* v. *Lambertson,* 30 *Vroom* 297.

In another decision of this court (1896) upon this subject, a leading case, that of *Consolidated Traction Co.* v. *Haight,* 30 *Vroom* 577, a well-considered opinion, delivered by the late Judge Dayton, thus expresses the pertinent principle: "It is the duty of others not to obstruct the track, but a violation of such duty does not necessarily constitute such contributory negligence as will relieve the trolley company from responsibility for an accident which might have been avoided by the exercise of proper care." In this case the court also declared that even assuming the plaintiff unreasonably obstructed the trolley track, such illegal act of the injured party did not absolve the company from its duty so to act as, if possible, to avoid running him down and doing him harm.

In the case next cited it was also held by the same court that the questions whether, under the evidence, the car, at the time of the accident, was going at a reasonable rate of speed, and the motorman operating it, was properly on his guard, and reasonably careful and vigilant in looking out for the safety of persons on and near his track, were for the jury. *Merkl, Administrator,* v. *Jersey City, &c., Railway Co.,* 46 *Vroom* 654, and cases cited on page 659.

In the last-cited case the only evidence on the part of the plaintiff of the cause of the accident to the intestate was the mute testimony of his dissevered body, the remains of which were scattered along the track, and this court said that while the rights of the defendant to the possession of their tracks over the public highway were paramount, they were not exclusive, and the traveler on foot had the right, certainly for purposes of crossing, to be upon them, and that the intestate was not shown to have been guilty of negligence, contributive from a legal standpoint, to the accident.

The facts established by the plaintiff's evidence show that there was no physical obstruction to the view of the motorman, who was in charge of the car, and that there was daylight

enough for the purpose of his seeing the plaintiff who was ahead of the car and so near to the rails of the track as to be liable to be struck by it in its passage over the rails.    There was evidence from which a jury would have been justified in finding that no bell or other signal of warning was given by the defendant to apprise the plaintiff of the coming car, and that any motorman, keeping a reasonably vigilant lookout ahead, should have seen the plaintiff and noticed that his face and eyes were turned in the direction he was walking; that his back was turned toward the car, so that he was not likely to see the car approaching, and therefore depended for his safety entirely upon his sense of hearing.    If it be contended that the dust created by the passing automobile, spoken of by the plaintiff, might have prevented the motorman from seeing the plaintiff, the sufficient answer, as reflected in the opinion of this court in the case next cited, is, that if that were an obstruction to the motorman's sight of his track ahead of him, he was then under a duty to use still greater care in the operation of his car and bound to reduce his speed, and to stop his car, if necessary, until his observation of the track ahead became clearer.    *Ball* v. *Camden and Trenton Railway Co.*, 47 *Vroom* 539.

In this last-cited case it was also declared by the court that the failure of the plaintiff in that case to look behind him for an approaching car was not negligence *per se.*

Under the authorities above referred to, and for the reasons given, it seems to us that these questions, both as to the contributory negligence of the plaintiff, as well as to the negligence of the defendant, belonged to the province of the jury, and that the judgment below should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Bogert, Vredenburgh, Congdon, Sullivan, JJ.    12.