Lizzie A. Woeckner, by her Father and Next Friend, E. A. Woeckner, *v.* Erie Electric Motor Co., Appellant.

*Negligence—Street railways—Infant—Electric car.*

A little girl three years and ten months of age was injured by an electric car while attempting to cross a street on which the car was running. The street was one hundred feet wide with a roadway sixty-four feet wide. The car tracks were twenty-five feet from the curb, and the street was at the time clear of obstructions. The plaintiff crossed the street diagonally from the curb to the tracks, in the direction in which the car was running. She was seen by the motorman when she started to cross, and when the car was one hundred feet from the point where she reached the tracks. The electric current had been turned off and the car was running slowly on a slightly declining grade. The testimony on behalf of the plaintiff tended to show that she had not changed her course or stopped from the time she left the curb until she was struck by the car, and that no effort was made by the motorman to stop the car until she was within a few feet of the tracks. The testimony for the defendant tended to show that the girl when within five or six feet of the tracks and eight or ten feet from the car, turned towards the sidewalk; that the motorman had brought the car nearly to a full stop, and then, assuming that there was no danger of an accident, released the brakes, and as the car moved forward the plaintiff suddenly turned and ran in front of it. The motorman testified that when the plaintiff started back he took it for granted that she was going back, and started his car. At the time of the accident plaintiff was running in front of her brother, a boy ten years of age, looking back over her shoulder towards him, and away from the direction in which the car was coming. *Held,* that the question whether the motorman took too much for granted and acted imprudently was for the jury.

Argued April 27, 1896. Appeal, No. 25, July T., 1895, by defendant, from judgment of C. P. Erie Co., Feb. T., 1893, No. 92, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before MORRISON, J., of the 48th judicial district, specially presiding.

At the trial it appeared that on July 25, 1890, the plaintiff a girl three years and ten months old was run over by one of the defendant's electric cars at Twelfth and State streets in the city

of Erie, and sustained such injuries that both of her legs had to be amputated. The circumstances of the accident are stated in the opinion of the Supreme Court.

The court charged in part as follows :

Now, gentlemen, the view we take of this case narrows your finding down to a somewhat close question. You will allow the evidence to carry your minds to State street on this 25th of July, 1890, and recall from the evidence just what took place there. It is for you to find what took place there. Different witnesses nearly always see these things a little differently. Witnesses may be mistaken and may be untruthful. It is for the jury to find the facts and when we refer to evidence we are not intending to bind you. You will recollect the evidence. We may speak of things that the evidence shows, but we are simply calling your attention to the way we understood it. The human ear is not perfect, and human understanding is not perfect, and we may not get this evidence exactly as you do, but as we understand it the car number 27 was going north on State street. It was in charge of the motoneer Watson who was upon the stand. When he arrived at 13th street—it seems that there the road begins to fall northward about five and a half inches to the hundred feet—that he cut off the current of electricity and allowed the car to run by its own gravity. The evidence seems to show after the defendant's testimony was in of the motoneer's, that he saw this child or the children about this time. On the part of the plaintiff a considerable number of witnesses were examined tending to show that he ought to have seen the children if he was attending to his business, but it was not shown that he actually did see this child in a dangerous condition until it came out on the defendant's investigation as we recall it. The little girl was on the sidewalk at about the time he was at 13th street, and she started to go from the eastern side of State in a diagonal direction—not at right angles with the railroad track—towards her home, in a direction that, according to some of the witnesses would require her to go about thirty or thirty-five feet to get to the first rail of the track —next to her—although the distance was but twenty-five feet. I think at right angles from the curbstone.

Now you will recollect how the witnesses detailed that she

was going—some of them say about as fast as a man would walk at a slow walk, some that she was running, toddling along with her little brother after her. Now the car was coming from a distance—when the plaintiff asks you to find from the evidence that the motoneer saw her—of between one hundred and one hundred and fifty feet, and from the direction she was going they were directing towards the same point. She had about thirty or thirty-five feet to go and the car between one hundred and one hundred and fifty. Now the evidence as we understand it tends to show that when the motoneer got within perhaps ten or fifteen, or perhaps more, feet from her and saw this little girl running towards the track that he applied the brakes and reduced the speed of his car considerably. Some of the witnesses say came nearly to a stop—that the little child was then quite close to the track. The plaintiff's witnesses say that she ran towards the track all of the time except when within a few feet she slackened up and looked back over her shoulder towards her little brother.

Witnesses for the defendant claim that when she got to or very near the track, some of them say she turned and went back a little distance, and others that she turned out and made a little circle and came right back to the track. There is a little discrepancy there about it, but several of the witnesses seem to keep her there very close to the track.

Now the motoneer it appears from the evidence—it is for you to say whether that was what actuated him—seems to think that there was danger of the girl getting on the track, and he stopped the car by applying the brakes.

Now it is quite important for you to determine how far she went from the track when some of the witnesses say she went back, and some say that she turned and made this circle, because here we think is the pinch in this case. Everybody agrees that he had control of the car, that he was ten or fifteen feet from the point where she was standing close, or was up pretty close to the track. Now did he exercise reasonable care in relaxing the brake and allowing that car to run down there with that little girl standing where you find her to have stood—under the evidence we do not say where she stood. Was she far enough away from the track, and were her actions such as that a competent man exercising reasonable care—for the company was

bound to have a competent man there—was justified in relaxing the brake and allowing that car to run down there, as he says he did, or was that the want of reasonable care under the circumstances? We need hardly say that no human being could tell what that little girl would do when she was in the position that the evidence seems to put her—whether she would go under the car or the other way, or back to the street. Probably no human being could determine by looking at her. She was liable, I suppose, to do whatever came into her mind; that is for you to say.

Now, if you find from all the evidence in this case that by exercising care—reasonable care, such as a competent, efficient man ought to have exercised at that time—this accident could and would have been avoided, then she is entitled to recover.

If you find that her conduct and movements were such that a reasonably prudent man observing her and having control of the car as he says he had, would have considered it safe and prudent to go on, and relaxed the brake as he says he did to go on, and the accident happened by an unforeseen thing and by her changing and coming suddenly back, so soon that he could not check the car again, then she ought not to recover. The law does not require the defendant company or its motoneer to do impossible or unreasonable things, but it does require them to use care, and if this motoneer saw the little child beside the track so near that it was dangerous, and appeared dangerous, and he had full control of his car, and if the child remained so close to the track that it appeared dangerous, and there was danger to a careful, prudent person looking at it that it would go on the track in front of the car and get injured, then he was not entitled to relax his brake and let the car go down in the way he did.

Now, there is the point in the case that we think in connection with the evidence calls for your very careful scrutiny and consideration.

If the little child was running towards the track as the plaintiff's witnesses say she was and did not turn the other way at all, and the motoneer had the car under control ten or fifteen feet from her, what would have happened if he had stopped the car? Would any accident have happened? What would you conclude?

But if she had run almost to the track and then turned around and was going away so that a prudent man had a right to believe and would believe that she was out of danger, and then she suddenly by a quick move and impulse put herself in danger, and he could not stop the car again until the accident happened he would not be to blame, if by reasonable care and effort—he would have to make a reasonable effort and use reasonable care. Now we have said to you that if you find that there was the want of this care, and that the accident happened by reason of that want of care and by negligence, the plaintiff can recover.

Plaintiff's points and answers, among others, were as follows :

1. If the jury find from the evidence that the plaintiff in this case was a child of tender years, to wit, about three years, ten months old at the time she was injured, the fact that she placed herself in a dangerous position on or near the street car tracks of the defendant will not relieve the defendant company from liability for the injury to the plaintiff, if the negligence of the defendant company or its employees caused said injury. *Answer :* Affirmed. [4]

2. If the jury believe from the evidence that the motoneer in charge of car No. 27 at the time of the alleged injury to the plaintiff saw, or could with reasonable care and diligence have seen the plaintiff, Lizzie A. Woeckner, on, or dangerously near the track on which said car was running, and could thereafter with the exercise of reasonable care and skill in operating said car, have stopped the same in time to have avoided the said injury to the plaintiff, then the verdict of the jury should be for the plaintiff. *Answer :* Affirmed. [5]

Defendant's points and answers, among others, were as follows :

2. If the jury find from the evidence that the accident was caused by Lizzie Woeckner negligently running in front of the approaching car of the defendant, then and in that case she was guilty of contributory negligence and should not recover damages in this case and your verdict should be in favor of the defendant. *Answer :* Refused. [2]

3. The defendant company has a right to run its cars upon the track in State street, and it was the duty of the plaintiff not to trespass upon its said tracks, and in case the jury find from

the evidence that the plaintiff did negligently go in front of the approaching car of the defendant, then and in that case the accident was caused by the negligent act of the plaintiff, and your verdict should be in favor of the defendant. *Answer:* Refused. [8]

4. If the jury find from the evidence that the accident was caused by the sudden and unexpected act of Lizzie Woeckner, then and in that case she is not entitled to recover and your verdict should be in favor of the defendant. *Answer:* Affirmed, if you find from the evidence that reasonable care on the part of the motoneer would not have prevented the accident. [9]

5. If the jury find from the evidence that Lizzie Woeckner, the plaintiff, ran towards the defendant's street car track, and thereupon the motoneer of the approaching car of the defendant brought said car to a stop, or almost to a stop, and that she thereupon started to run away from said car in an eastwardly direction, and thereupon the motoneer released his brake and permitted the car to advance, and immediately after his having done so said Lizzie A. Woeckner suddenly turned and ran upon the track in front of the approaching car, and that the motoneer was not able to stop said car in time to prevent it striking the said Lizzie Woeckner, then and in that case the damage consequent was caused through the negligence of said Lizzie A. Woeckner, the plaintiff, and not by or on account of the negligence of said defendant company, and your verdict should be in favor of the defendant. *Answer:* Refused. Under the evidence in this case we cannot agree that this point states the law correctly. [10]

6. If the jury believe the evidence of the witnesses on the part of the defendant, then and in that case the defendant company is not guilty of negligence, and your verdict should be in favor of the defendant. *Answer:* Refused. [11]

Verdict for plaintiff for $15,000 on which judgment was entered for $11,000. Defendant appealed.

*Errors assigned*, among others, were (2, 4, 5, 8–11) above instructions.

*J. M. Sherwin* and *S. A. Davenport*, for appellant, cited on the question of negligence : Weimer's Railroad Law of Penna.

577, 579; Moore v. Penna. R. R., 99 Pa. 305; Phila. & Reading R. R. v. Shearen, 47 Pa. 300; Baltimore & Ohio R. R. v. Schwindling, 101 Pa. 261; Gillespie v. McGowan, 100 Pa. 144; Messenger v. Dennie, 137 Mass. 197; Phila. & R. R. v. Spearin, 47 Pa. 301; Glassey v. Hestonville, Pass. Ry., 57 Pa. 174; Winter v. Federal St. & Pl. Val. Pass. Ry., 153 Pa. 26; Hestonville Pass. Ry. v. Connell, 88 Pa. 520.

*E. A. Walling*, with him *S. M. Brainerd, Geo. H. Higgins* and *T. A. Lamb*, for appellee.—A child of the age of three years and ten months cannot be guilty of contributory negligence: Schnur v. Citizens Traction Co., 153 Pa. 30; Erie City Pass. Ry. Co. v. Schuster, 113 Pa. 412; Summers v. Bergner & Engle Brewing Co., 143 Pa. 114; Bradford v. Downs, 126 Pa. 622; Ry. v. Foxley, 107 Pa. 537; Taylor v. Canal Co., 113 Pa. 162; R. R. v. Layer, 112 Pa. 414; Kestner v. Pgh. & Bir. Traction Co., 158 Pa. 422; Gilmore v. Street Ry., 153 Pa. 31; Gibbons v. Wilkes-Barre Ry., 155 Pa. 279; Elliott on Roads and Streets, 622; Moebus v. Herrmann, 108 N. Y. 349; Ehrisman v. Harrisburg R. R., 150 Pa. 186; Johnson v. Reading City Pass. Ry., 160 Pa. 647.

The gripman of a cable car should always be on the alert to avoid danger, and his attention should never be diverted from his duties: Schnur v. Citizens Traction Co., 153 Pa. 29.

OPINION BY MR. JUSTICE FELL, July 15, 1896:

The plaintiff was three years and ten months of age at the time of her injury. Accompanied by her brother, who was ten years old, she attempted to cross a street on which the cars of the defendant were running. The street was one hundred feet wide, with a roadway sixty-four feet in width. The car tracks were twenty-five feet from the curb, and the street was at the time clear of obstructions. The plaintiff crossed the street diagonally from the curb to the tracks, in the direction in which the car was running. She was seen by the motorman when she started to cross, and when the car was one hundred feet from the point where she reached the tracks. The electric current had been turned off and the car was running slowly on a slightly declining grade.

The testimony in the plaintiff's behalf was that she had not

changed her course or stopped from the time she left the curb until she was struck by the car, and that no effort was made by the motorman to stop the car until she was within a few feet of the tracks. The testimony produced by the defendant tended to show that the plaintiff when within five or six feet of the tracks and eight or ten feet from the car turned toward the sidewalk; that the motorman had brought the car nearly to a full stop, and then assuming that there was no danger of an accident released the brakes, and that as the car moved forward the plaintiff suddenly turned and ran in front of it.

Because of her age contributory negligence could not be imputed to the plaintiff. If her witnesses were correct in their statements the motorman was guilty of negligence in not attempting to stop the car until the moment of the accident. If the defendant's witnesses were correct the only debatable ground now presented by the record is whether the plaintiff by changing her course after having turned toward the sidewalk came so suddenly and unexpectedly upon the track as to relieve the motorman from the charge of negligence and the company from liability. The case is not that of a child coming suddenly in front of a moving car at a place where its presence on the street was not to be expected. This child was seen by the motorman approaching the tracks in front of his car. He knew of the danger in time to guard against it. In a measure he did so. According to his own testimony he had full control of the movements of the car. He brought it almost to a stop, and could readily have stopped it entirely before the child reached the track. Thus far he was careful. But when he saw the child turn from the tracks he released the brakes and let the car go forward on a down grade. She was then within ten feet of the front of the car, and within five feet of the tracks. She was running thoughtlessly and playfully in front of her brother, looking back over her shoulder toward him and away from the direction in which the car was coming. Her brother, understanding the danger of which she was unconscious, was running after her and was within a very few feet of her. If the motorman had held the car a moment, or taken the brakes partly off and allowed it to move forward slowly, the accident would have been avoided. When asked, "Why did you not wait until she got back a safe distance from the track?" he replied: "She

was going on, we don't have time to stand around; when she started back from the curb I took it for granted she was going back." Whether he took too much for granted and acted imprudently was for the jury. If the jury accepted the statements of the defendant's witness this was the turning point of the case, and it was submitted by the learned judge with great care and ability and with entire fairness to both parties.

The judgment is affirmed.