THE BERGEN COUNTY TRACTION COMPANY, PLAINTIFF IN ERROR, v. HEITMAN'S ADMINISTRATOR, DEFENDANT IN ERROR.

1. That a child two years and three months old—to whom contributory negligence cannot be imputed—was suffered to roam unattended in the public street cannot relieve a traction company from liability for its negligence in the management of its car, resulting in the child's death.

2. A motorman in charge of an electric traction car moving in the public streets, where he has reason to expect little children are playing, must exercise a high degree of watchfulness in the operation of his car.

[*Argued March 1st*, 1898; *decided June 20th*, 1898.]

On error to the Supreme Court.

For the plaintiff in error, *Thomas B. Harned.*

For the defendant in error, *John P. Stockton, Jr.,* and *Warren Dixon.*

The opinion of the court was delivered by

VREDENBURGH, J.  The plaintiff's administrator obtained a verdict and judgment on the trial of this cause before the Supreme Court Circuit of Bergen County against the traction company for $1,000 damages, for causing the death of the plaintiff, a child of about two years and three months of

age, who was run over by the company's car, in the public highway. The question to which we are confined by the assignments of error upon the record is whether the trial court should have nonsuited the plaintiff, or, at the close of the evidence, have directed a verdict for the defendant. The age of the child excludes from the case the question of the contributory negligence of the deceased as affecting the right of recovery, and the fact that an infant of such tender years was suffered to run in the public street, unattended and away from the custody or control of any guardian or care-taker, cannot excuse the company from liability for its negligence. This principle was decided in this state by the Supreme Court in the case of *Newman* v. *Phillipsburg Horse Car Co.*, 23 *Vroom* 446.

The court below left the question of the defendant's responsibility for the accident to the jury, upon the controlling point of the case, under the following instruction, viz.: "If the evidence satisfies you that the motorman was running at an undue rate of speed or failing to keep such a lookout as reasonable care required, and that the accident was occasioned by that cause, why, then, you will find your verdict for the plaintiff. If the evidence does not satisfy you upon that point you will find your verdict for the defendant."

Irrespective of the high rate of speed at which the plaintiff claimed that the circumstances showed the car was running at the time of the accident, there was sufficient evidence to go to the jury as to the motorman's negligence in failing to observe the children in the immediate front of his car until after he was warned by the shouting of a passenger sitting behind him in the car.

The defendant's own witness, Henry Hodges, a car conductor in the employ of the company, but riding as a passenger that day, swears he saw, from his seat on the right side of the car, three children in front of the car, not two feet from the rail, and next to some bushes growing on that side of the car; that he, to use his words, "hallooed at the motorman and got off his seat, and he, the motorman, put the brake on

and reversed the current, and it knocked me right back in my seat."

I quote more fully from his testimony, as follows:

"When the motorman got around the curve, and got towards where these bushes were, I saw three children; I got up and hallooed at the motorman; one of them came back like, as if something had made him scared at something; I could not tell what it was; he turned back and ran right into the car; the other two ran away—ran towards the house."

The motorman who had charge of the car testified on the point relating to the stopping of the car, in these words:

"When first I seen the children, I put on the brake and reversed the car."

So that it follows that he, though standing, did not see the children until after the passenger sitting behind him had seen them, and had had time to halloo at the motorman and time to rise from his seat, into which he was afterwards knocked back by the reversal of the motion of the car when the electric current was reversed and the brake put on. Here was the lapse of precious moments of time before the motorman saw the children, on the assumption, of course, that he tells the exact truth in stating that he reversed the current when he first saw the children. If he had been properly vigilant, standing at the front of the car and looking in the direction of the track before him, he would have been able to have reversed the current at the very instant the children came in view around the curve, and before a passenger had aroused him by shouting from the car at him. There was some evidence also tending to show that the motorman should have expected to meet children at the place of the accident. Upon his cross-examination he admitted that he "did not know whether he did or not testify before the coroner's jury that he was expecting to find children at that location," opposite some dwelling-houses, and he admitted that he had seen children there on previous occasions. He also testified that he "had got the car under the full current when he reached these bushes." This was just before the child was killed.

These were questions of fact (of the truth of which the jury were the only proper judges) going to show the motorman's want of vigilance and care in the management of his car on this occasion. The fact that his car had just rounded a curve in the road opposite dwellings. where he had previously seen children playing in the road, and where bushes growing near the track tended to obstruct his view, in and of itself called for the exercise of a greater degree of watchfulness before he turned on the full force of his motor in order to increase his speed. In this class of casualties, involving injuries by the cars of electric traction companies, going often with great rapidity in the public highways, motormen are properly held to a careful and constant lookout for every movement of human life on their front, and especially for the movements of children who are of such tender years as to be deemed incapable of contributory negligence. Children of the age of this child, and of even greater age, are regarded by approved judicial decisions as incapable of committing contributory negligence. It is unnecessary to refer to.these authorities, because no exact rule in this respect is established. The Pennsylvania Supreme Court has had occasion to decide many of such cases, and of these I have selected the following to show the degree of watchfulness required by the decisions of these courts in the management of such cars under closely similar conditions.

In the case of *Woeckner* v. *Erie Electric Motor Co.*, 35 *Atl. Rep.* 182, where the child injured was three years and ten months old, the motorman was careful to bring his car almost to a stop, and, when he saw the child turn from the track, released his brake, " taking it for granted," as he testified, that the child could safely get away from the track, but the court held that whether he took too much for granted or not was for the jury.

In the case of *Schnur* v. *Citizens' Traction Co.*, 25 *Atl. Rep.* 650, the material facts corresponded very closely to those of the case at bar. The child injured was less than six years of age, and there was evidence that other persons saw the child in front when the car was two lengths and one-half

away, and that the gripman was standing on the side of the
car, looking towards the houses he was passing, and when
hallooed to by persons who saw the child, he paid no atten-
tion to the warning.   In the last respect it differs from the
case at bar.   The court, in sustaining the judgment below
against the company, said that the gripman "should keep his
eye constantly on the track before him."   Without intending
to approve this expression as a correct rule in all respects, it
is evident that if the motorman in the present case had exer-
cised even a reasonable degree of vigilance in the direction
his car was moving, he would have seen the children on the
side of the rail either before or certainly as soon as the passen-
ger behind him saw them.   The gain of this instant of time,
by the earlier discovery by the motorman of the presence of
the children in front and his prompt action, might have saved
the child's life; at least it is impossible for this court to say
it would not, and this was a proper question for the jury to
determine from all the evidence.

The case of *Pletcher* v. *Scranton Traction Co.*, 185 *Pa. St.*
147, brought for injury to a child under somewhat similar
conditions, holding that where the negligence of the motor-
man is not the immediate or proximate cause of the injury,
the question is for the court and not one for a jury, is readily
distinguishable from the case in hand.   There the child ran
suddenly from the sidewalk to the track, and after halting on
it an instant, was struck by the car.   The appellate court, in
sustaining the action of the court below ordering the plaintiff
to be nonsuited, said "that the car by which the plaintiff's
son was killed was running at a high and possibly negligent
rate of speed, may for the present be conceded, but unless
this was the proximate cause of the accident or was a mate-
rial factor in it, the defendant is not liable.   The boy darted
in front of the car when it was so close upon him that, stop-
ping as he did, it was inevitable that he should be struck.
For all we can see it would have occurred had the car been
running at an entirely safe and proper rate."   In the case at
bar, whatever may have been the rate of speed of the car,

and whether or not that was a proximate cause of the accident, or whether or not the accident would have occurred if the car had·been going at a moderate and·proper speed, yet it seems by no means certain that if the motorman had been looking in the direction he was moving he would not have observed the children as quickly, at least, as did the passenger behind him and in time to avoid the accident. This was for the jury to determine.

This view of the case renders it unnecessary to compare or reconcile it with the ruling in that of *Moss* v. *Philadelphia Traction Co.*, 180 *Pa. St.* 389, cited in brief of plaintiff in error, and in which the evidence of the motorman's alleged negligence, resulting in the death of a child (three years and eight months old), consisted only in the claimed undue rate of speed of the car, the court holding that " indefinite statements " that the car was going " unusually fast " was insufficient to establish negligence in that regard.

I think the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, COLLINS, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH. 13.

*For reversal*—None.