# Silberstein et al., Appellants, *v.* Showell, Fryer & Co. (No. 1).

*Negligence—Automobile — Infant — Not wholly "darting out" case—Public crossing—Duty of chauffeur—Evidence of negligence in defendant's case—Undue speed—Charge of court.*

1. A party is entitled to the benefit of all the affirmative facts helpful to his case, notwithstanding they may be adduced by his opponent's testimony. The prime object of a trial, where the facts are disputed, is to elicit the truth; that is what the jury is to seek after and find, if they can, upon a consideration of all the evidence submitted to them.

2. A driver need not stop, if he can, with reasonable certainty, pass in front, or in the rear, of a pedestrian; to thus divert the movement of his car, at a public crossing, he is under the definite duty of having it under control; if an accident cannot be avoided without stopping, he must stop his car. He is not, per se, negligent when he deflects his machine to pass around a pedestrian in

the act of crossing the street at a public crossing, and cannot, in the exercise of due care, be charged with neglect in not anticipating the unexpected thing to happen; it naturally follows that he must anticipate the expected thing to happen; an illustration of the former would be the negligent act of a person of mature mind; of the latter, the negligent act of a child.

3. When an automobile driver deflects his car to pass around a little child, he must expect from it (the most natural thing from one of this age) some heedless, thoughtless, capricious act, the negligent act which comes from childish sportiveness, characteristic of an immature mind.

4. Where an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision.

5. When children are on a street playing at a public crossing, plainly visible as the driver approaches, and one of them is in the act of crossing the street, in view of the driver, 50 feet away, his obvious duty, on approaching the crossing, is to bring his car under such control as the circumstances demand; with his car thus under control, as he approaches, if he attempts to pass the child in the rear, his car should still be under control, the control that good sense demands, so that, responsive to the child's irrational acts, he can stop to avoid injury; he should expect children's negligent acts; the sudden twisting and turning of the child, caused by the movement of the car or the noise it made, would not excuse him.

6. When a child is in a place of safety and exhibits no intention to move until the car is so near it cannot be stopped, and the child suddenly darts in front of the driver and is injured the owner of the car is not chargeable with negligence because of the failure of the driver to stop the car, the theory of law being that there was want of notice and lack of time after the notice was given for the driver to escape the impending danger.

7. In an action against the owner of a motor truck to recover damages for personal injuries to a child between 3 and 4 years of age, the evidence tended to show that the child started to cross, from the west, a north and south street at a public crossing, where some children were playing on the sidewalk and roadway on the eastern side of the street. The truck approached the northern crossing of the east and west street, running directly south, a little west of the centre of the north and south street, astride the west rail of a single track street car line. A witness for plaintiff stated that the truck shot suddenly from the east out of the intersecting east and west street, but he was the only witness who so testified. A witness

for defendant testified that the child was about half a yard below the east and west street, when it darted across the other street; another witness for defendant stated that the child was in the centre of the tracks when she first observed it, and that the truck was then at the north house line of the east and west street. When the child was in or coming close to the centre of the north and south street, the truck was about 50 feet from her, or the width of the street plus the off-set, 14½ feet. The driver of the car saw her at the first rail on the western side. The accident occurred in the evening, the street was well lighted, and no obstacle obscured the vision of the driver. In attempting to pass the little girl, he deflected his car to the rear, blowing his horn as a warning; this noise caused the child to turn back towards her home, and then, evidently frightened, she ran forward again to where the children were playing. Her acts confused the driver. When she made the last turn to go over to the children, the driver turned his car in that direction, the fender struck her, knocking her down, the car passing over her body and inflicting serious injury. The car did not stop until it ran on the sidewalk and struck an awning pole, the impact bending the pole. *Held:*

(a) That the court erred in submitting the case to the jury only on the strength of the testimony of the single witness for plaintiff, as to the direction from which the truck came, without giving any weight to the contradictory testimony of defendant's witnesses on that subject;

(b) That the court erred in limiting the case to but one circumstance, namely, the sudden turning of the car from one street to the other;

(c) The court erred in failing to instruct the jury that, where the truck approached in direct view, as it did from the north, according to defendant's witnesses, children of immature minds could not be charged with the duty "to take care of themselves," and that, as to them, when the negligent act of the one who causes the injury is made to appear, consequent liability follows;

(d) That the court erred in charging that, if the child suddenly changed her mind, and ran back in front of the machine again, and again the automobile was turned, it was not by the driver's negligence that the accident occurred;

(e) That the court erred in not giving full effect to evidence which tended to show that the child was in the centre of the street, in motion, and in plain view of the driver, who had ample opportunity to stop his car before he reached the child;

(f) That there was sufficient evidence of undue speed, shown by the distance the car ran after the accident, and the force with which it struck the awning pole.

Argued January 8, 1920. Appeal, No. 55, Jan. T., 1920, by plaintiff, Adolph Silberstein, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1917, No. 1807, on verdict for defendant, in case of Matilda Silberstein, by her father and next friend, Adolph Silberstein, and Adolph Silberstein, in his own right, v. Showell, Fryer & Co., Inc. Before MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Trespass to recover damages for injuries to a child between three and four years of age. Before FINLETTER, J.

The opinion of the Supreme Court states the circumstances of the accident.

Verdict and judgment for defendant. Matilda Silberstein, appealed.

*Errors assigned* were various instructions set forth in the opinion of the Supreme Court.

*John J. McDevitt, Jr.,* with him *Harry A. Gorson,* for appellants.—Under the authorities, if this child was a sufficient distance from the automobile and in a position of peril, it was the duty of the chauffeur to stop, although on three different occasions the learned trial judge distinctly charged that the chauffeur was not required to stop: Ely v. Pittsburgh, C. & C. R. R., 158 Pa. 233; Husvar v. D., L. & W. R. R., 232 Pa. 278; Sikorski v. P. & R. Ry., 260 Pa. 250; Castor v. Schaefer, 224 Pa. 208; Anderson v. Wood, 264 Pa. 98; Healey v. Shedaker, 264 Pa. 512; McMillin v. Strathmann, 264 Pa. 13; Yeager v. Gately & Fitzgerald, 262 Pa. 467; Kuehne v. Brown, 257 Pa. 37; Banks v. Shoemaker, 260 Pa. 280; Kerk v. Peters, 261 Pa. 279; Reichle v. Phila. Rapid Transit Co., 241 Pa. 1; Satinsky v. Mutual Brewing Co., 187 Pa. 57; Walbridge v. Schuylkill Electric Ry. Co., 190 Pa. 274; Slavin v. Northern Cambria St. Ry., 47 Pa. Superior Ct. 454; Bloom v. Whelan, 56 Pa.

302 SILBERSTEIN et al., Appel., *v.* SHOWELL F. & C.

Superior Ct. 277; Lorah v. Rinehart, 243 Pa. 231; Blakley v. Pittsburgh Rys., 243 Pa. 250.

*Edward M. Biddle,* with him *Robert T. McCracken,* for appellee, cited: Stahl v. Sollenberger, 246 Pa. 525; McMillen v. Strathmann, 264 Pa. 13.

OPINION BY MR. JUSTICE KEPHART, March 22, 1920:

The plaintiff, a little girl between the age of three and four, was with her grandmother, in front of or near her home, on the west side of 17th street. Her home is located on the southwest corner of this and Latona street, Philadelphia. She left her grandmother and started to cross 17th street, at the public crossing, to the place where some children were playing on the sidewalk and roadway on the eastern side of the street. Latona street does not make a perfect intersection with 17th street, the former street on the eastern side being some distance south of this same street on the western side, the off-set or difference in the southern line on the eastern and western sides of 17th street being 14½ feet. Appellee's Ford truck approached the northern crossing of Latona street from the north, running directly south, a little west of the centre of 17th street, astride the west rail of the single-track street-car line. Defendant's witness, Marie Mosely, says the automobile was about half a yard below Latona street when the child darted across the street; another witness for defendant, Sara Savitzky, states that the child was in the center of the tracks when she first observed it, and (corroborating Marie Mosely) the automobile was then at the north houseline of Latona street. When the child was in, or coming close to, the centre of the street, the automobile was about 50 feet from her, or the width of the street plus the off-set, 14½ feet, and the jury might well have so found. The driver of the car saw her at the first rail, on the western side. The accident occurred in the evening, the street was well lighted, and no obstacles ob-

scured the vision of the driver. In attempting to pass the little girl, he deflected his car to her rear, blowing his horn as a warning; this noise caused the child to turn back towards her home and then, evidently frightened, forward again to where the children were playing. Her acts confused the driver; when she made the last turn to go over to the children, the driver turned his car in that direction; the fender struck her, knocking her down, the car passing over her body, inflicting serious injury. Appellee in its paper-book states: She sustained a fracture of the frontal bone and of the left arm, together with general contusions, and her right eye was affected, leaving her with a squint, or crossing, of that organ. The car did not stop until it ran on the sidewalk, striking and bending an awning pole.

The court below submitted the case to the jury, but on an erroneous theory of the law, steadfastly adhered to throughout the charge. A verdict was found for defendant—it could scarcely have been otherwise under the charge—upon which judgment was entered and this appeal taken.

The court below summed up the entire controversy in stating in its charge: "Coming down to the other question, which really is the important one, did this man have an opportunity to observe the child and to avoid this accident? That is the real important question in this case." Here was predicated a clear duty, elsewhere discussed. Whether it was performed was for the jury under proper instructions. Had the court adhered to it, no complaint could have been made; but instead of charging as the statement suggests, the case was treated along different lines.

When the plaintiff's case closed, there was scarcely any evidence of negligence to submit to the jury, excepting Dunn's testimony; but, eliminating this evidence, the missing circumstances of the accident, tending to establish negligence, were supplied by the defendant's evidence. It presented a case for the jury. The court

below, however, in submitting the case, based appellant's right to recover solely on the strength of Dunn's testimony. A party is entitled to the benefit of all the affirmative facts helpful to his case, notwithstanding they may be adduced by his opponent's testimony. "The prime object of a trial where the facts are disputed is to elicit the truth; that is what the jury is to seek after and find if they can upon a consideration of all the evidence submitted to them": Husvar v. Del., L. & W. R. R. Co., 232 Pa. 278, 281. The learned judge dismissed appellant's testimony, with the exception of Dunn's, as follows: "[The witnesses] do not say the automobile was so far away that the driver could have had any chance whatever to avoid the child."

Dunn testified the car shot suddenly out of Latona street to 17th street, and the court held a greater measure of care should be exercised because of the sudden turning on 17th street out of Latona. Without considering the testimony of defendant's witnesses, Mosely and Savitzky, the court charged: "I am free to say to you that if it were not for the testimony of Mr. Dunn, the first witness called, I would have directed a verdict in favor of the defendant in this case, on the testimony of the plaintiff alone......He [Dunn] saw this automobile moving in an eastern direction......which would have taken it out Latona street......But he is the only witness in this case who says the machine came out of Latona street, and if that were not in the case......I am quite free to say to you......that the case [as] made ......[out by] the plaintiff, would be that of a child darting suddenly out of the street in the path of the south-going automobile." The court had already charged the jury: "Of course if when the driver was coming down the street he saw the child going across he did not have to stop, to avoid her, there was no negligence in not stopping, his duty was not to stop, but his duty was to avoid hitting her. Therefore, when he saw her run west, or about in the middle of the street, he had a right to de-

flect his machine to pass behind where she was......
But if the little child suddenly then changed her mind
and ran back in front of the automobile again, and
again the automobile was turned, it was not by his negli-
gence that the accident resulted. I mean that is true if
she did that suddenly when she was close to the ma-
chine." Under the facts as developed, this part of the
charge was erroneous. We have frequently announced
the rule of law with respect to automobiles at public
crossings. "Vehicles have the right of way on the por-
tion of the highway set aside for them, but at crossings
all drivers, particularly of motor vehicles, must be high-
ly vigilant and maintain such control that, on the short-
est possible notice, they can stop their car so as to pre-
vent danger to pedestrians; on the other hand, between
crossings, drivers are not held to the same high standard
of care, although, of course, they must be constantly on
the lookout for the safety of others": Anderson v. Wood,
264 Pa. 98; McClung v. Penna. T. Cab. Co., 252 Pa. 478;
Yeager v. Gately & Fitzgerald, 262 Pa. 467; Kuehns v.
;Brown, 257 Pa. 37, 41. Of course, a driver need not stop
if he can, with reasonable certainty, pass in front or in
the rear of a pedestrian; by thus diverting the move-
ment of his car, at a public crossing, he is under the defi-
nite duty of having it under control; if an accident can-
not be avoided without stopping, he must stop his car.
A driver is not, per se, negligent when he deflects his ma-
chine to pass around a pedestrian in the act of crossing
the street at a public crossing, and he cannot, in the
exercise of due care, be charged with neglect in not
anticipating the unexpected thing to happen; it natural-
ly follows that he must anticipate the expected thing to
happen; an illustration of the former would be the
negligent act of a person of mature mind; of the latter,
the negligent act of a child, as later herein discussed.

To regulate safe passage of pedestrians and vehicles
at public crossings, each must yield certain rights. We
have said the automobile must come to the crossing

under control. Had the driver in this case adhered to this rule there would have been no accident. Before he reached this street crossing, he knew children were in the habit of playing there on Saturday evenings; when he drew near he saw them playing. When he was on the opposite side of Latona street, more than 50 feet away, he must have seen this little child in the centre of the street; if he did not, he was unobservant, or his attention must have been elsewhere. When an automobile driver deflects his car to pass around a little child, he must expect from it (the most natural thing from one of this age) some heedless, thoughtless, capricious act, the negligent act which comes from childish sportiveness, characteristic of an immature mind. Children of this age are not responsible under the law, they know no measure of care; but what would have been the act of a maturer mind, when a shrieking noise is suddenly set up immediately behind it?

It was the duty of the driver to keep a constant lookout and to keep his car under such control as to avoid accident incident to its ordinary operation, and such unexpected dangers as might have been avoided by the exercise of due care. Where an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision. Where a child is in a place of safety on a sidewalk, or elsewhere, and exhibits no intention to cross the street, nor makes any movement showing such purpose, until the car is so near it cannot be stopped, and the child suddenly darts in front of it and is injured, the owner of the car is not chargeable with negligence because of the failure of the driver to stop the car. The driver or chauffeur cannot be expected to guard against every possible contingency. He is not an insurer against all accidents. This rule of law is based chiefly, if not exclusively, on the theory of

the want of notice and lack of sufficient time after the notice is given for the driver to escape the impending danger.   When children are on the street, playing at a public crossing, plainly visible as the driver approaches, and one of them is in the act of crossing the street, in view of the driver, 50 feet away, his obvious duty, on approaching the crossing, is to bring his car under such control as the circumstances demand; with his car thus under control, as he approaches, if he attempts to pass the child in the rear, his car should still be under control, the control that good sense demands, so that, responsive to the child's irrational acts, he can stop to avoid injury; he should expect the child's negligent acts; the sudden twisting and turning of the child, caused by the movement of the car, or the noise it made, would not excuse him.

Further on in the charge the court below says: "But if Mr. Dunn can be taken one hundred per cent literally, and if you do come to the conclusion that the automobile came out of Latona street, there is a different proposition presented, a proposition which would make liability on the part of the defendant if you believe it.   Because a man coming around the corner from one street and entering into a new pathway would have a much higher degree of care before he engaged himself in the new pathway than he would have if he were coming down on a straight line, because coming down on a straight line he could see all in front of him, and other people could see him and regulate their movements by it.   If you are going to go across 17th street at Latona and you see an automobile coming down 17th you could guard yourself against it, but if you are going across 17th street from the west to the east and an automobile came out of Latona street back of you, you can see you would not be nearly as well able to take care of yourself as if the automobile came from the north or the south. Therefore the driver of the automobile, being required to guard against the liability of people crossing 17th

street, would have a higher duty of observing what was going on down 17th street than if he had come in a straight line down 17th. For that reason and that reason alone I leave this case to you." While herein is omitted a consideration of the reciprocal rights of vehicles and passengers on intersecting streets and the duty of the former to be highly vigilant and keep their cars under control, the rule as to the operation of a vehicle suddenly turning a corner is well stated; the error into which the court fell when he described the reciprocal duties of a pedestrian and an automobile at a public crossing, where an automobile approaches in direct view, was in not telling the jury that children of immature minds could not be charged with a duty "to take care of" themselves; and, as to them, when the negligent act of the one who causes the injury is made to appear, consequent liability follows; in other words, the impression left on the jury's mind was that a child was to be judged by the same standard as to care as an adult, and in no part of the charge does the court refer to their immunity from such obligation.

We have stated the facts as they predominate throughout the testimony and as the jury could have found them. The case cannot be regarded "wholly as a darting out case." It is not one where a child is in a place of safety on a street or elsewhere, and makes no movement until the automobile is near, when it cannot be stopped; but here the child is in the centre of the street, in motion, in plain view of the driver, with ample opportunity to stop his car before he reaches it. The court did not consider this phase of the case, nor did it give full effect to all the evidence. True, there was some evidence from which the jury would have been warranted in finding that the child darted out suddenly from the sidewalk, but the plaintiff was entitled to clear instruction on all phases of the law as it applied to the evidence and as we are now asked to declare it. As the case went to the jury it was limited to but one circumstance, namely, the

sudden turning of the automobile from Latona to 17th street. The jury must evidently have felt that a child could be guilty of negligence the same as an adult.

There was sufficient evidence of undue speed, apart from Dunn's testimony, and his evidence was competent; when the machine ran on the sidewalk, crashing into the awning pole with force sufficient to bend it, circumstances were presented from which the jury might have found an excessive rate of speed, considering the driver's prior knowledge of the conditions at this place of the accident and what he could see before reaching it.

The case of McMillen v. Strathmann, 264 Pa. 13, was entirely different. The accident occurred in the middle of the block; the truck was 50 feet away when the child ran across the street to the curb on the eastern side. It had reached a place of safety when, without warning, it turned and darted back across the street in front of the moving truck. There was no motion of the child, or other warning from it, to cause the driver to expect this movement, and it had reached and was in a place of safety when it suddenly darted out. Reference is made to Woeckner v. Erie Electric Motor Co., 176 Pa. 451; Todd v. Phila. & R. Ry. Co., 201 Pa. 558; and Distasio v. United Traction Co., 35 Pa. Superior Ct. 406.

The judgment of the court below is reversed and a venire facias de novo awarded.