## Commonwealth v. Wolysn.

*Criminal law—Involuntary manslaughter—Death by automobile—Reckless driving.*

Where a person drives an automobile along the main street of a populous village and sees a three-year-old child in a place of danger, it is his duty to so operate his automobile as to prevent injury to the child, if that is possible; and if he fails to do so and drives recklessly and kills the child, he may be convicted of involuntary manslaughter.

Motion for new trial. Q. S. Schuylkill Co., June Sess., 1923, No. 632.

*M. A. Spicker*, Deputy District Attorney, for Commonwealth.

*A. D. Knittle*, for defendant.

BECHTEL, P. J., Nov. 5, 1923.—The defendant in this case was convicted of involuntary manslaughter, and, through his counsel, has made a motion for a new trial, in support of which three general reasons have been filed: 1. The verdict was against the evidence. 2. The verdict is against the charge of the court. 3. The court erred in its charge to the jury as to what constitutes manslaughter under the circumstances of the case.

From the evidence in the case, it appears that a little girl, three and one-half years old, about 9 o'clock in the morning of June 4, 1923, was sweeping the pavement and the gutter in front of her home, which is on the main street of Tower City, a town of considerable size, and a street on which there is a great deal of traffic. The last seen of the child before the accident, it is testified, she was a yard or about a yard from the gutter. The defendant was operating a Ford automobile on this street at this time, and, according to some of the witnesses for the Commonwealth, was running it at from thirty to thirty-five miles per hour. No one saw the child struck, although one of the Commonwealth's witnesses testified that at the moment of striking, one of the occupants of the car shrieked and she looked and saw the body of the child thrown into the air as high as the top of the automobile. The driver of the car claims not to have seen the child until it suddenly darted in front of him and was about three feet in front of his machine. His companion on the front seat testifies to having seen it a farther distance away, designating the distance in the court-room.

The question is whether or not this state of facts would render the defendant guilty of involuntary manslaughter. In Com. *v.* Coccodralli, 74 Pa. Superior Ct. 324, the court, in considering a case somewhat similar to the one at bar, says: "It is true that there was nothing to indicate that the defendant was actuated by express malice towards the young girl or that he had a conscious intention to injure her, but the circumstances under which the injury was inflicted were such, if the jury found the facts to be as testified to by the witnesses for the Commonwealth, as to give rise to a legal implication of malice. 'The excessive rate of speed at which an automobile is driven is a product of the will of its driver and not the result of mere inattention or negligence. The two cannot be confused any more than the hurling of a baseball bat into a crowd of spectators can be confused with the accidental slipping of the bat from the hands of the batter. A blow inflicted by a wilful act applies to a much more dangerous agency, since it cannot be that what would be a crime if done with a plaything weighing a few ounces ceases to be a crime if committed with an instrument weighing thousands of pounds, driven by many horse power of force. There is, therefore, no legal reason why the crime of assault and battery may not be committed by driving an automobile

on a public highway at a rate of speed that endangers the safety of others and actually results in such injury:' State *v.* Schutte, 87 N. J. L. 15. One who wilfully drives an automobile on the public streets at a rate of speed or in a manner which involves a reckless disregard for the safety of other persons lawfully using the streets, and by so doing causes the death of another, is guilty of felonious homicide: State *v.* Campbell, 82 Conn. 671."

In the case of Com. *v.* Godshalk, 76 Pa. Superior Ct. 500, it is said:

"There should be no doubt as to the duty of an operator of a motor-vehicle on the public highway. The Act of Assembly of June 30, 1919, P. L. 678, is mandatory in defining the duties of every operator of a motor-vehicle. Section 19 specifically provides that the speed shall not be reckless or at a rate greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as not to endanger property or the life or limb of any person. Section 25 provides that the operator shall keep his vehicle as close as possible to the right-hand side of the highway. The dispute between the Commonwealth and the defendant was narrowed to the single proposition that the defendant violated the provisions of this act of assembly, and, as a result of such violation, this little girl was killed.

"There can be no controversy as to our decision in regard to such a case. Reckless driving upon the highway is not the exercise of reasonable or ordinary care in the use of it, and is a failure to perform a duty imposed by law. When an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car, if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision. Non-expert witnesses are competent to express an opinion as to the rate of speed of an automobile, if their every-day experiences gives them sufficient knowledge to form an intelligent judgment on the subject: Freel *v.* Wanamaker, 208 Pa. 279; Silberstein *v.* Showell, 267 Pa. 298; Dugan *v.* Arthurs, 230 Pa. 299."

It seems to us, under these decisions, too clear for argument that it is the duty of the operators of automobiles to exercise the care which a prudent mind would ordinarily exercise in the circumstances in which they find themselves. There can be no question that if the defendant was driving down the main street of a populous village and saw a three and one-half-year-old child in a place of danger, it was his duty to so operate his automobile as to prevent injury to the child, if that was possible. The fact that the defendant testifies that he did not see the child until it was three feet in front of his car, even if true, might not have excused him in the minds of the jury, for the reason that other witnesses saw the child at a much greater distance away from the car, including even the passenger occupying the front seat with the driver. There is nothing in the evidence to show that the view of the driver was obscured or that there was anything the matter with his vision. This being so, it is difficult to understand why he did not see the child if he was looking, and the fact that he did not look could not excuse him.

Counsel for defendant complains of the answer of the court to the first point, claiming that while the point was affirmed, the subsequent language of the court negatived the idea of its affirmation. We cannot agree with this contention. The language complained of was simply a truism, used for the purpose of illustration. The entire charge of the court negatives absolutely the idea that the defendant could be convicted of the crime charged merely upon proof of his excessive speed, because the jury were told repeatedly that the child must have been injured as a result of that excessive speed in order to make it material to the issue. We have examined the record care-

4 D. & C.

fully and feel convinced that there is ample evidence to sustain the verdict of the jury. We are also convinced that there was no error in the charge of the court to the jury upon that evidence. We are, therefore, of opinion that the motion for a new trial must be overruled.

And now, Nov. 5, 1923, the motion for a new trial is overruled and the defendant is directed to appear for sentence.

From M. M. Burke, Shenandoah, Pa.