## Small et al. *v.* Morgan, Appellant.

Argued September 28, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Wesley McWilliams,* of *Wesley, Wagoner, Trout-man & McWilliams,* for appellant.

*Victor Frey,* with him *Philip A. Campbell,* for appellees.

OPINION BY STADTFELD, J., November 10, 1937:

This was an action in trespass on behalf of the eight year old minor plaintiff and his parents to recover damages for injuries sustained by the minor as a result of the alleged negligence of the defendant in the operation of his car.

The minor plaintiff, on Feb. 23, 1935, about 8:00 P. M. left the west sidewalk of 11th St., at a fireplug situated at the west curb of 11th St., in front of the premises on the southwest corner of Webster St., in the City of Philadelphia.

He walked diagonally in a southeasterly direction 65 feet and reached a point 15 feet from the east curb of 11th St., when he was struck by the front bumper of defendant's northbound automobile. The automobile passed over his body and stopped 20 to 25 feet ahead of the boy who lay unconscious in the street.

The auto was running 20 to 25 miles per hour just before the accident.

The lighting conditions were such that the only eye-witness, De Medio, could see the small plaintiff when he was on the west side, approximately 80 feet from the witness.

There was no other traffic in the street, according to defendant's statement.

The minor plaintiff was unconscious 14 to 16 hours. He suffered a fractured skull and the force of the collision separated all of the sutures of the skull.

The case was submitted to a jury and a verdict was returned in favor of the minor plaintiff in the sum of $600, and in favor of his parents in the sum of $212.

The plaintiffs filed a motion for a new trial, alleging

the inadequacy of the verdict, and the defendant filed his motion for judgment n. o. v. The court en banc, in an opinion by Gordon, Jr., P. J., refused the defendant's motion for judgment n. o. v. and granted the plaintiffs' motion for a new trial. The present appeal is from the refusal of the court below to grant the defendant's motion for judgment n. o. v. The granting of the motion for a new trial is likewise assigned as error.

In considering the motion for judgment non obstante veredicto, we must assume the truth of the evidence for plaintiffs and every inference that properly may be drawn therefrom: *Martin v. Lipschitz,* 299 Pa. 211, 149 A. 168; *Christ v. Hill Metal & Roofing Co.,* 314 Pa. 375, 171 A. 607; *Ford v. Reinoehl,* 120 Pa. Superior Ct. 285, 182 A. 120.

The testimony of the happening of the accident, as presented by the plaintiff, is confined to one witness, one Joseph De Medio. The evidence of De Medio shows that he stood on the steps of the candy store on the east side of 11th St. shown on the plan as No. 817 South 11th St. His testimony was in part as follows: "Q. When you were on the steps of the candy store, what did you see happen to this little boy sitting here? A. Like was standing on the west side toward the south side of the little store, near the fireplug. This kid was going across, walking to the other candy store there. Then the car came by at about 20 or 25 miles an hour."

He testified that when he first saw the car it was 10 or 15 feet "from the kid," coming north on 11th St. The trial judge then questioned him: "Q. The boy, as I understand what you said was on the west side of 11th Street? A. Yes. Q. Not far from Howard Street? A. Not far from Howard Street. Q. Was he trying to cross from the west to the east side? A. Yes, walking across."

He then testified that the child had "almost gotten

across the street" and "the car came up 11th Street and ran "into him" and "the kid fell down under the car and the car went "about 20 or 25 feet." ......
"Q. The first time you saw the car, where was it? A. 10 to 20 feet away. Q. Away from him? A. Yes. Q. Did you see the kid before that—did you see him start across the street? A. Yes; I saw him going across. Q. Did you see him start across the street? A. I don't remember. Q. So that the first time you saw the boy was when the car was about 10 or 15 feet away? A. 10 or 15 feet away. ......Q. When you saw the little boy at the fireplug did you see anybody with him? A. Yes another boy in back of him walking. Q. Did they both come across toward you? A. Yes." Again on cross-examination: "Q. You say you saw two colored boys? A. Two colored boys come across. Q. Coming across the street? A. Yes. Q. Did the older boy have the little colored boy by the hand? A. No, the little colored kid was coming first across the street. ......By the Court: Q. Was he walking or running fast? A. Walking. Q. Then he was hit? A. Yes. ......Q. The plaintiff got almost to the curb first? A. Yes. Q. He was hit then? A. Yes. Q. He was not running across? A. No. ......Q. But he was going across—you saw him going across? A. Yes. ......Q. When you saw the automobile 15 feet below the boy, how close to the east curb was the boy at that time? A. 14 or 15 feet."

The evidence of Ralph Pasquarella shows that the street "was not dark" at the point of the accident. Several of the stores were open and lighted.

The defendant testified that he saw a little boy on the right side of his car. That this boy, when he first saw him, was 20 feet ahead of his car; that the street was deserted. He "did not see any person to the left side of his car."

The court submitted the case to the jury in a careful charge, instructing them to find "whether under all the circumstances, the boy was long enough within the view

of the defendant, when crossing the street, to have enabled Mr. Morgan by the exercise of ordinary care, and by keeping a lookout, to have seen the boy and avoid hitting him. If, however, the boy darted out in front of the defendant's car in such a way, and under such circumstances, and by reason of the darkness, that the defendant could not and would not be expected to see him, then there would be no negligence on the part of the defendant."

The jury evidently found under the evidence, that the minor plaintiff had been in the highway in the range of the defendant's vision long enough for the driver to have done what the Supreme Court said in *Moore v. Leininger* 299 Pa. 380, 149 A. 662 "to have stopped his car" and "the fact that he did not do so" and ran a considerable distance after striking the child, "point to lack of proper control or of proper attention on his part."

As stated by the Supreme Court in *Silberstein et al. v. Showell, Fryer & Co.,* 267 Pa. 298, 109 A. 701, "Where an automobile driver sees a child in a place of danger ......and has sufficient time to stop his car, if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision."

The facts in *Moore v. Leininger,* supra, are in many respects similar to those in the instant case. In that case the Supreme Court said in an opinion by Mr. Justice WALLING, at p. 382: "This evidence tended to show the child was struck near the east curb. When starting, she came out between cars parked at the west curb. From there she walked in the open street in sight of the driver, with nothing to obstruct his view or distract his attention while she was walking across the street. It was defendant's contention that the child was hit while between the street car tracks. This is supported by the fact that her body and blood from the accident were found there. Even so, the question

of the driver's negligence was for the jury, for in that event, the child walked over ten feet in full view of the driver, after clearing the parked cars. During that time the truck, going at fifteen miles an hour, would cover at least fifty feet. Whether the driver should have been able to stop within that distance was for the jury. That he did not, and that the truck ran approximately fifty feet after the accident, point to lack of proper control or of proper attention on his part. Had he even slackened his speed the child would have cleared his pathway. Hence, the evidence tending to charge the defendant with negligence was not overcome by inconsistent physical facts. The driver of a motor car must be vigilant at all times and keep a constant lookout. See *Newman v. Protective Motor Service Co.,* 298 Pa. 509. In other words, the driver must be alert and, on seeing a child approaching his pathway, take such action, if possible, as to save it from harm. See *Tatarewicz v. United Traction Co.,* 220 Pa. 560; also *Bloom v. Whelan,* 56 Pa. Superior Ct. 277. The true test, as stated by Mr. Justice FRAZER, in *Kuehne v. Brown,* 257 Pa. 37, is as to whether the driver in the exercise of due care should have seen the child in time to have avoided the accident; also whether after seeing it he took proper steps to do so.

"This was not a darting out case, as the child was walking and not running and was in view of the driver for such time as justified a finding that with the exercise of due care he might have avoided the accident."

The third assignment of error relates to the granting of a new trial. The trial judge in his opinion stated that "the verdict in favor of the minor plaintiff was inadequate in view of the injuries received by him." The granting or refusal of a new trial lies largely in the discretion of the lower court. Unless there has been an abuse of discretion we do not reverse. We cannot say that from the character of the injuries

sustained that there was an abuse of discretion in granting a new trial.

The assignments of error are overruled and judgment affirmed.